# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LISA K. TODD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. CIV-10-755-L |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Lisa Todd ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the Defendant Commissioner's final decision denying Plaintiff's application for supplemental security income payments under the Social Security Act. This matter has been referred to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B). Upon review of the pleadings, the record ("Tr."), and the parties' briefs, the undersigned recommends that the Commissioner's decision be reversed and the matter remanded for further proceedings.

**Administrative Proceedings**

Plaintiff initiated these proceedings by filing her application seeking supplemental security income payments in August, 2006 [Tr. 101 - 106]. She alleged that arthritis and injuries from a car accident have resulted in constant pain, inability to sit or stand for long periods, and limited use of her hands, all of which became disabling as of June, 1992 [Tr. 101

and 124]. Plaintiff's claims were denied and, at her request, an Administrative Law Judge ("ALJ") conducted an April, 2009 hearing where Plaintiff, who was represented by counsel, Plaintiff's sister, and a vocational expert testified [Tr. 16 - 48 and 71]. In his May, 2009 decision, the ALJ found that while Plaintiff was unable to perform any of her past relevant work, she retained the capacity to perform other available work and, accordingly, was not disabled within the meaning of the Social Security Act [Tr. 7 - 15]. The record contains Plaintiff's request for review of the ALJ's decision by the Appeals Council of the Social Security Administration [Tr. 1 and 3], but no evidence of the Council's ultimate determination.[1] In any event, Plaintiff subsequently sought review of the Commissioner's final decision in this court.

**Standard of Review**

This court is limited in its review of the Commissioner's final decision to a determination of whether the Commissioner's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citations and quotations omitted). Nonetheless, while this court can neither reweigh the evidence nor substitute its own judgment for that of the Commissioner, the court's review is not superficial. "To find that the [Commissioner's]

---

[1]Although Plaintiff does not advance it as a claim of reversible error, she notes several instances where the record in this case appears to be incomplete. The Commissioner's response brief does not address Plaintiff's incomplete record contentions. The recommended remand of this matter will give the parties the opportunity to correct any deficiencies in the record.

decision is supported by substantial evidence, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion." *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988) (citation omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* at 299.

**Determination of Disability**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.§423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. §416.920(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-752 (10th Cir. 1988) (describing five steps in detail). Under this sequential procedure, Plaintiff bears the initial burden of proving that she has one or more severe impairments. 20 C.F.R. § 416.912; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). Then, if Plaintiff makes a prima facie showing that she can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show that Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Turner*, 754 F.2d at 328; *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984).

**Plaintiff's Claims of Error**

On judicial review, Plaintiff first maintains that "[t]he Commissioner has failed to follow the treating physician rule." [Doc. No. 18, p. 6].[2] Next, she contends that "the ALJ's assessment of Claimant's RFC is not supported by substantial evidence." *Id.* at 8. Finally, it is Plaintiff's claim that "the Commissioner (ALJ's) step five decision is not supported by substantial evidence." *Id.* at 10. Because remand is recommended for the reason that the ALJ did not properly consider the medical evidence of record, the remaining claims will not be addressed. *See Watkins v. Barnhart,* 350 F. 3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

**Analysis**

**Medical Evidence**

With respect to Plaintiff's mental and physical impairments and as is relevant to her claims on appeal, the evidence of record reflects as background that Plaintiff "was involved in a car accident in 1993. . . . During the accident, she sustained multiple injuries including several fractured ribs, broken jaw, collarbone, scapulas, and fractured cervical spine at the level of C6 and C7[.]" [Tr. 9]. In early November, 2004, she was seen by Marilyn Hines, D.O., for anxiety; Xanax[3] was prescribed [Tr. 201 - 202]. Later that same month, Plaintiff

---

[2] Unless otherwise indicated, quotations in this report are reproduced verbatim.

[3] Xanax is an antianxiety medication, belonging to a drug class known as
(continued...)

4

reported to Dr. Hines that her "anxiety was bad but she has been able to manage with her medication." [Tr. 200]. She was assessed with "chronic anxiety doing well" as well as chronic back spasm; her medications were renewed. *Id.*

As is pertinent to the relevant period of her claim,[4] Plaintiff began seeing her treating physician, Griffith C. Miller, M.D., in March, 2006 [Tr. 217 - 219]. On physical examination, Dr. Miller noted[5] pain in the left trapezius muscle and at C1 - C7 and arm damage with decreased grip on the left [Tr. 218]. He prescribed Lortab, Xanax, and Soma.[6] *Id.* On April 4, 2006, Dr. Miller noted "Failed Neck Syndrome." [Tr. 216]. Medications were refilled at this time and again on May 2, 2006, June 1, 2006, *id.* and, June 29, 2006 [Tr. 215]. Plaintiff complained of constant cervical pain on July 26, 2006, and Dr. Miller noted pain in the C7- C8 area with decreased range of motion. *Id.* Plaintiff was seen on August 25, 2006, and on September 25, 2006, and the entries "same" were made [Tr. 214].

---

[3](...continued)
benzodiazepines. Xanax is used for the management of anxiety disorder, for short-term relief of anxiety symptoms, and panic disorder. *See* http://www.pdrhealth.com.

[4]The Commissioner states that the relevant period in this case began in August, 2006 [Doc. No. 19, pp. 1 - 2, n. 1].

[5]Dr. Miller's handwriting is difficult to decipher, and notations which are not relatively clear have been omitted.

[6]Soma is a muscle relaxant used in combination with rest, physical therapy, and other measures, for the relief of severe and painful musculoskeletal conditions, such as muscle strains and spasms. *See* http://www.pdrhealth.com.

Following Plaintiff's complaint of "[i]ntractable neck pain" on October 24, 2006, physical examination revealed "pain in all cervical areas [with reduced range of motion]." [Tr. 213]. The notation "same" was entered in November, 2006. *Id.*

On January 2, 2007, Plaintiff was seen by Vicktorya Mills, D.O., for a consultative physical examination in conjunction with her application seeking Social Security payments [Tr. 168 - 173]. Dr. Mills completed a Range of Joint Motion Evaluation Chart in which she found a full range of motion for each affected joint [Tr. 168 - 169]. Likewise, Plaintiff's Hand/Wrist Sheet reflected Dr. Mill's opinion that Plaintiff had a full range of motion in her wrists, thumbs, and fingers, that she could effectively oppose her thumbs to her fingertips, that she could manipulate small objects, and that she could effectively grasp tools such as a hammer [Tr. 170]. As to the Backsheet Lumbrosacral Spine chart completed by Dr. Mills, the only negative finding was that Plaintiff had weak heel and toe walking – it was hard for her to keep balance [Tr. 171]. Dr. Mills' written report reflects her findings on physical examination as to Plaintiff's musculoskeletal and mental status:

> MUSCULOSKELETAL: There is no evidence of muscle spasm. Muscle bulk is equal bilaterally. Deep tendon reflexes are 2/4 bilaterally. Range of motion is found to be grossly normal in the upper and lower extremities. Gait assessment: Patient is able to ambulate safely without the need for assistive device. Gait is stable. Patient is able to get up from the chair and get on to the exam table. She states that she has difficulty keeping her balance when she was asked to heel and toe walk; however, both of those activities could be done. Straight-leg raising tests are negative in both the sitting and lying positions. Grip strength bilaterally is 5 on a scale of 1 to 5 in the upper extremities. Muscle strength in the lower extremities is found to be equal bilaterally. Joint exam is grossly normal. There are no effusions or erythema noted. Patient is able to appose thumb to fingertips. She has appropriate coordination.

<blockquote>

* * *

MENTAL STATUS: Patient presents today alone. Appearance is casual. Motor behavior is appropriate. Patient does not present with any involuntary movements. Speech, thought process, and thought content are intact. Her sentences appear with purpose. Patient does not present with perceptual abnormalities such as hallucinations. Mood is stable. Short-term and long-term memory appears intact. Judgment and insight appear intact.
</blockquote>

[Tr. 173]. Dr. Mills' assessment was of "[c]hronic pain from a history of car accident in 1993." *Id.*

Plaintiff was seen again by treating physician Miller several weeks after her examination by Dr. Mills [Tr. 210]. On physical examination Dr. Miller found her to have pain to palpitation in her cervical area at C-6 to C-7 [Tr. 210]. He continued to prescribe Lortab for pain, Xanax for anxiety as to her chronic pain, and Soma to relax her muscles. *Id.*

On February 1, 2007, approximately one month after Plaintiff's examination by Dr. Mills, the State agency psychiatric consultant completed a Psychiatric Review Technique in which she determined that Plaintiff did not suffer from a medically determinable mental impairment [Tr. 174 - 187]. The consultant determined that Plaintiff had no mental functional limitations [Tr. 184] and noted that Plaintiff did not allege a mental impairment in her application but that she had given a history of anxiety to Dr. Mills [Tr. 186]. The State agency psychiatric consultant stated that Plaintiff did not complain of mental health problems at her examination by Dr. Mills and that Dr. Mills found her to be alert, oriented, and to have completely intelligible speech. *Id.* A Physical Residual Functional Capacity Assessment

7

was completed by a State agency medical consultant at this same time [Tr. 188 - 195]. Plaintiff was found to be able to perform a full range of medium work. *Id.*

Dr. Miller examined Plaintiff once again on April 9, 2007, and found that she had pain in her cervical area with reduced range of motion in all planes; Lortab, Xanax, and Soma were again prescribed [Tr. 212]. On physical examination on June 4, 2007, Dr. Miller noted pain bilaterally in Plaintiff's cervical area with a decreased range of motion in all planes [Tr. 209]. The usual medications were renewed. *Id.* Entries for July 3, 2007, and August 2, 2007, state "same." [Tr. 208]. Medications were renewed on October 1, 2007, and November 6, 2007 [Tr. 222].

On December 10, 2007, Dr. Miller completed a Physical Residual Functional Capacity Questionnaire on Plaintiff's behalf [Tr. 225 - 229]. He described her symptoms as "[c]hronic intractible pain in c/spine (c1 - c7), reduced strength in left upper due to brachial plexus damage, discogenic pain." [Tr. 225]. Dr. Miller characterized Plaintiff's pain as being in her "c/spine on constant basis, aggravated by activity." *Id.* He identified the "clinical findings and objective signs" as "[m]usculoskeletal spasms in the paravertebrals, weakness in the left upper. Reduced range of motion in bilateral upper extremities, reduced grip in left hand, reduced range of motion in c/spine." *Id.* Dr. Miller opined that depression and anxiety contributed to the severity of Plaintiff's symptoms and functional limitations; that her pain was severe enough to constantly interfere with her attention and concentration; and, that she had a marked limitation in her ability to deal with work stress [Tr. 226].

As to specific functional restrictions, Dr. Miller stated that Plaintiff could continuously sit for fifteen to thirty minutes [Tr. 227]; could continuously stand for no more than ten minutes, *id*; could sit and stand/walk for less than two hours in an eight hour working day, *id.*; must walk three to five minutes on an as needed basis every fifteen to thirty minutes, *id.*; must have "a job which permits shifting positions *at will* from sitting, standing or walking, *id.* (emphasis in original); will sometimes need unscheduled breaks, *id.*; can never lift ten pounds or greater and can lift less than ten pounds only on an occasional basis, [Tr. 228]; has a significant limitation in doing repetitive reaching, handling or fingering, *id.*; can only use her right hand, fingers, and arm for twenty-five percent of an eight hour day, *id.*; can use her left hand for less than twenty-five percent of an eight hour day, her left fingers for fine manipulation for twenty- five percent of an eight hour day, and can never use her left arm for reaching, *id.*; and, would be absent from work three times a month due to her impairments [Tr. 229]. Finally, when asked to describe any other limitations that would impact Plaintiff's "ability to work at a regular job on a sustained basis[,]" Dr. Miller stated that "[a]ny form of stress will aggravate the anxiety, resulting in increased episodes of depression/withdrawal from any social activity, including family, children and close friends." *Id.*

Plaintiff's final treatment of record by Dr. Miller was on January 1, 2008 [Tr. 222]. He noted "Failed Cervical Surgery," with physical examination revealing pain to palpitation bilaterally in the cervical area. *Id.* Lortab, Soma, and Xanax were prescribed. *Id.*

Consistent with her testimony at the administrative hearing [Tr. 22 - 23], Plaintiff then began receiving treatment from Brian A. Allee, D.O., in October, 2008 [Tr. 232]; chronic neck and back pain, anxiety, and depression were assessed and, as the ALJ noted [Tr. 10], Celexa[7] was prescribed.

One final medical record that Plaintiff has brought to the court's attention is not a part of the transcript but is attached as an exhibit to Plaintiff's opening brief [Doc. No. 18, Exhibit 1, pp. 6 - 7]. It is an initial progress note dated June 24, 2009, from the Oklahoma Institute of Psychiatric Medicine, Amar N. Bhandary, M.D., diagnosing Major Depression, Panic Disorder with Agoraphobia, and Personality Disorder NOS. *Id.* Plaintiff accurately submits that the September 16, 2009, Letter Brief [Tr. 97 - 99] which he submitted to the Appeals Council reflects the enclosure of this new evidence [Tr. 99]. Nonetheless, as was discussed in connection with the administrative history of this proceeding, the record on appeal does not contain a Notice of Appeals Council Action. Thus, it is impossible to determine whether this new evidence was, in fact, considered by the Appeals Council. Because Plaintiff did not frame a supported argument of error on this point and because remand is otherwise required, the undersigned has not considered the ramifications of this evidence.

---

[7] Celexa is a medication for the treatment of depression that persists nearly every day for at least 2 weeks and interferes with everyday living. *See* http://www.pdrhealth.com.

**The ALJ's Decision**

**Step Two**

In his evaluation of the foregoing evidence of record,[8] the ALJ focused first on the evidence establishing Plaintiff's medically determinable impairments [Tr. 9 - 10]. He detailed the findings of the consultative examining physician and her diagnosis of chronic pain, finding that Plaintiff's "arthritis and chronic pain status post motor vehicle accident injuries have a significant impact upon her ability to perform basic work activities and thus are severe impairments." [Tr. 9]. The ALJ does not provide the evidentiary basis for his finding that arthritis is a severe impairment, *id.*; Dr. Mills, the consultative examining physician upon whom the ALJ relied, made no such assessment [Tr. 173]. And, with one exception, the ALJ made no reference to the findings of treating physician Miller in connection with his determination of Plaintiff's severe physical impairments [Tr. 9].[9]

As to Plaintiff's claimed severe mental impairments, the ALJ concluded as follows:

Further, the claimant reported psychiatric symptoms (6E-2). The claimant's treating provider, Griffith C. Miller, MD, prescribed the claimant Xanax for anxiety. Dr. Griffith noted on January 17, 2007 that the claimant's anxiety was due to chronic pain (8F-4). He noted in a questionnaire on December 10, 2007 that depression and anxiety affected her physical condition (10F-4). It also appears that the claimant was later prescribed Celexa by another physician

---

[8]The ALJ, of course, could not have evaluated Dr. Bhandary's June, 2009 note as it was generated after his May, 2009 decision [Tr. 7- 15].

[9]The ALJ did refer to the December 10, 2007, notation by "Dr. Griffith" that Plaintiff had begun to have seizures [Tr. 9]. Clearly, the ALJ was referring to Dr. Griffith *Miller*. The fact that the ALJ determined that Plaintiff's seizures were not a medically determinable impairment has not been challenged by Plaintiff on appeal.

11

> (10E-2). However, Dr. Mills noted during the consultative examination, that the claimant's speech, thought process, and thought content were intact (2F-8). Her mood appeared stable and her short-term and long-term memory appeared intact (2F-8). She did not present with perceptual abnormalities such as hallucinations (2F-8). The claimant's judgment and insight also appeared intact (2F-8).
>
> The claimant's medically determinable mental impairment of anxiety does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere. A state agency medical consultant, Sally Varghese, MD, reviewed the claimant's records on February 1, 2007 and found that the claimant did not have a medically determinable mental impairment (3F). Another consultant affirmed these findings on April 24, 2007 (7F). These opinions are given little weight as the evidence demonstrates that the claimant has a medically determinable mental impairment. However, this impairment only results in minimal limitations.

[Tr 10].

The ALJ then proceeded to support this conclusion by stating that "the undersigned has considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria." [Tr. 10]. He then assessed mild limitations in activities of daily living, in social functioning, and in maintaining concentration, persistence, or pace. *Id.* He further determined that Plaintiff has experienced no episodes of decompensation which have been of extended duration. *Id.* The ALJ provided no support for these conclusions but committed no reversible error because he considered the impact of Plaintiff's impairments

in determining her residual functional capacity ("RFC")[10] at step four of the sequential process [Tr. 11]. *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error here became harmless when the ALJ reached the proper conclusion that [claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.").

**Step Three**

Plaintiff has voiced no claim that the ALJ erred in concluding that Plaintiff had no impairment or combination of impairments that meets or equals a listed impairment.

**Step Four**

The ALJ determined that Plaintiff had the RFC for sedentary work - stand/walk for about two hours in an eight hour workday, sit for at least six hours in an eight hour workday, and lift/carry ten pound occasionally and less than ten pounds frequently – limited only by "up to a twenty percent reduction in her ability to sustain concentration and persistence due to pain." [Tr. 11]. In making this assessment, the ALJ considered the previously detailed opinion evidence provided by her treating physician, Dr. Miller, who found, in short, that Plaintiff could not physically perform work at any exertional level and that her pain would constantly interfere with her concentration and that any type of work stress would aggravate her anxiety [Tr. 12]. The ALJ gave "little weight" to this opinion evidence "as it is not consistent with the other objective medical evidence." [Tr. 13]. Specifically, he found that

---

[10]Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 416.945(a)(1).

> [t]he findings of the consultative examiner, Viktorya Mills, DO, do not support Dr. Miller's opinion (2F). Dr. Mills found that the claimant had no evidence of muscle spasms (2F-8). She also found that the claimant had normal deep tendon reflexes and normal range of motion (2F-8). She also found that the claimant's gait was stable and her joint exam was grossly normal (2F-8]. Additionally, she noted that the claimant's grip strength was 5 on a scale of 1 to 5 in the upper extremities and her muscle bulk was equal bilaterally (2F-8). Further, no sensory deficits were noted (2-F-8). Moreover, she noted that the claimant's short term and long-term memory appeared intact (2F-8). She also noted that the claimant's judgment and insight appeared intact (2F-8).
>
> A state agency medical consultant, Thelma Fiegel, MD, reviewed the claimant's medical records on February 1, 2007 to determine her physical residual functional capacity (4F). It was found that the claimant could occasionally lift and/or carry fifty pounds and frequently lift and/or carry twenty-five pounds. It was also found that the claimant could stand and/or walk for about six hours in an eight hour workday and sit for about six hours in an eight hour workday. No other limitations were found. Another state agency medical consultant reviewed the claimant's records on April 29, 2007 and affirmed these findings (6F). This opinion is given significant weight as it is consistent with objective medical evidence. However, due to Dr. Miller's opinion and the claimant's testimony regarding her limitations, it is found that the claimant has the above listed residual functional capacity. The objective medical evidence however does not support any further limitations.

[Tr. 13].

Under the law of the Tenth Circuit, "[a]ccording to what has come to be known as the treating physician rule, the Commissioner will generally give more weight to medical opinions from treating sources than those from non-treating sources." *Langley v. Barnhart,* 373 F.3d 1116, 1119 (10th Cir. 2004). A sequential analysis must be undertaken by an ALJ when considering a treating source medical opinion which relates to the nature and severity of a claimant's impairments. *Watkins,* 350 F.3d at 1300. The first step, pursuant to Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *2, is to determine whether the opinion

14

is well-supported by medically acceptable techniques. *Watkins,* 350 F.3d at 1300. At the second step, adjudicators are instructed that "[e]ven if well-supported by medically acceptable clinical and laboratory diagnostic techniques, the treating source's medical opinion also must be 'not inconsistent' with the other 'substantial evidence' in the individual's case record." SSR 96-2p, 1996 WL 374188, at *2. If both of these factors are satisfied with regard to a medical opinion from a treating source, "the adjudicator must adopt a treating source's medical opinion irrespective of any finding he or she would have made in the absence of the medical opinion." *Id.* If, on the other hand, "the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Watkins,* 350 F.3d at 1300.

Once the ALJ determines that a treating source opinion is not entitled to controlling weight, he must consider the weight he does give to such opinion "using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927.'" *Id.* "Those factors are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion." *Id.* at 1300-1301. If he rejects the opinion completely, the ALJ must offer specific and legitimate reasons for so doing. *Id*; *Miller v. Chater,* 99 F.3d 972, 976 (10th Cir. 1996).

In maintaining that the ALJ failed to properly adhere to the treating physician rule in this case, Plaintiff first questions the ALJ's assessment of Plaintiff's mental health impairment [Doc. No. 18, pp. 7 - 8]. She points out that the ALJ rejected the State agency psychological consultants' opinions that she did not have a medically determinable mental impairment [Tr. 10]. Nonetheless, the ALJ proceeded to find at step two – with no assessment of Plaintiff's functional mental capabilities of record and without disclosing his evidentiary rationale – that Plaintiff had mild limitations in various mental functional areas. *Id.* Thus, Plaintiff claims that the ALJ injected his own medical opinion into his decision - making. Then, at step four, the ALJ determined, again without discussion of the evidentiary basis for the finding, that Plaintiff "has up to a twenty percent reduction in her ability to sustain concentration and persistence due to pain." [Tr. 11].

A review of the record reveals that the ALJ appears to have made this finding based not on medical evidence proffered by the treating physician or any other medical source but on testimony he elicited from the vocational expert at Plaintiff's administrative hearing:

> Q. Okay. For the next hypothetical we'll go to the light exertional level as defined in the regulations with the following restrictions due to psychological limitations, and specifically due to pain, the individual has some limitations in the ability to sustain concentration and persistence. With these limitations, could such a person still do the claimant's past work, or remaining past work?
>
> A. It would depend upon the level of reduction. Unskilled work may still be appropriate, up until about a 20 percent reduction. And then work of any sort is not sustainable.

[Tr. 42]. In other words, the ALJ did not, as the Commissioner maintains [Doc. No. 19, pp. 7 - 8], properly weigh the opinions of Plaintiff's treating physician and the other medical sources to determine the extent, if any, of Plaintiff's mental limitations. There is simply no explanation in his decision of how he did so or how he determined that Plaintiff "has up to a twenty percent reduction in her ability to sustain concentration and persistence due to pain." [Tr. 11]. Instead, it appears he took the testimony of the vocational expert that unskilled work would not be sustainable with any reduction greater than twenty percent due to psychological limitations and transformed that vocational evidence into a finding – a finding that should have been informed by medical evidence – that Plaintiff "has up to a twenty percent reduction in her ability to sustain concentration and persistence due to pain." *Id.*

As to Plaintiff's physical limitations, the ALJ's *only* stated reason for giving little weight to the opinions of treating physician Miller is that "[t]he findings of the consultative examiner, Viktorya Mills, DO, do not support Dr. Miller's opinion[.]" [Tr. 13].[11] Without question, if an ALJ finds that a treating physician's opinion is not consistent with other evidence in the record, that opinion is not entitled to controlling weight. SSR 96-2p, 1996 WL 374188, at *2. Nonetheless, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. [§] . . . 416. 927." *Id.* at *4. And, while not every factor is relevant in every case, *see Oldham v. Astrue,*

---

[11]The ALJ also positively referenced the physical residual functional capacity evaluations prepared by the State medical consultants [Tr. 13].

509 F. 3d 1254, 1258 (10th Cir. 2007), the first three factors are clearly relevant here: "the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; [and] (3) the degree to which the physician's opinion is supported by substantial evidence." *Watkins,* 350 F. 3d at 1301. Dr. Miller examined Plaintiff on numerous occasions and made clinical findings as a result of those examinations [Tr. 208 - 219 and 222]. If the ALJ considered these findings in making his determination to give Dr. Miller's opinions little weight, the decision is silent as to his rationale for rejecting such findings while affirmatively adopting the contrary findings of the one-time consultative examining physician. In short, "[t]he ALJ did not explain why the opinion of the consultative examiner and the non-examining medical consultant should be given more weight than the opinions of Dr. [Miller]." *Daniell v. Astrue,* 384 Fed. Appx. 798, 803 (10th Cir. 2010). *See also Robinson v. Barnhart,* 366 F.3d 1078, 1084 (10th Cir. 2004) ("The treating physician's opinion is given particular weight because of his unique perspective to the medical evidence that cannot be obtained from objective medical opinions alone or from reports of individual examinations, such as consultative examinations[.]") (quotations and citations omitted).

## **RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT**

For the foregoing reasons, the undersigned recommends that the Commissioner's decision be reversed and the matter remanded for further proceedings.

The parties are advised of their right to object to this Report and Recommendation by April 20, 2011, in accordance with 28 U.S.C. §636 and Fed. R. Civ. P. 72. The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 31st day of March, 2011.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE